Lisa M. Martens
martens@fr.com
Andrew M. Abrams
abrams@fr.com
FISH & RICHARDSON, P.C.
12390 El Camino Real
San Diego, CA  92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

Richard A. Halloran, State Bar No. 013858
LEWIS AND ROCA LLP
40 North Central Avenue
Phoenix, Arizona  85004-4429
Direct Dial:  (602) 262-0213
Direct Fax:  (602) 734-3746
EMail:  RHalloran@LRLaw.com

Attorneys for Plaintiff Cricket Communications, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Cricket Communications, Inc.**, <br><br>                          Plaintiff, <br><br> vs. <br><br> **Abid Nazir, d/b/a GSM Cellular**, <br><br>                          Defendant. | No. <br><br> **COMPLAINT** <br><br> 1. Trademark Infringement - 15 U.S.C. § 1114(1) <br> 2. Trademark Infringement, Unfair Competition, and False Designation of Origin – 15 U.S.C. § 1125(a) <br> 3. Common Law Trademark Infringement <br> 4. Common Law Unfair Competition |

For its Complaint, Plaintiff Cricket Communications, Inc. hereby states and alleges as follows:

**NATURE OF THE ACTION**

1. This action seeks permanent injunctive relief and damages against Defendant for willful infringement of Plaintiff's trademark CRICKET under the Lanham Trademark Act of 1946, as amended, Title 15, United States Code, §§ 1051 *et seq*. (the "Lanham Act"), and for engaging in unfair competition, deceptive acts and other unlawful practices under the Lanham Act and related state claims.

2. Cricket Communications, Inc. ("Cricket" or "Plaintiff") is a corporation organized under the laws of Delaware, with a business address at 10307 Pacific Center

Court, San Diego, California 92121.  Cricket is a leading provider of unlimited wireless services, and has revolutionized the telecommunications industry through its development of a simple, affordable wireless service offering consumers and local businesses a flat-rate unlimited service over the latest technology, high-quality, all-digital wireless network.  Cricket's total revenues in the United States in 2007 were $1.63 billion.  Cricket had approximately 2.86 million subscribers to its CRICKET branded wireless telecommunications services as of the end of the fiscal year 2007.

3. On information and belief, defendant Abid Nazir, d/b/a GSM Cellular ("Defendant") is an individual with a principal business address at 247 W. Grant Road Suite 2, Tucson, Arizona 85705.

4. On information and belief, Defendant is in the business of operating three GSM Cellular stores in the Tucson area which sell wireless communications goods and services.

5. On information and belief, despite the fact that he is not an authorized Cricket dealer, Defendant has engaged in the illicit sale and distribution of Cricket wireless products, and has fraudulently accepted payments intended to compensate Cricket for providing wireless communications services to its customers.  On information and belief, Defendant has sold "re-flashed" used or stolen phones to consumers and attempted to pass off such phones as authorized Cricket products.

6. Defendant has intentionally sought to portray himself as an official Cricket dealer and to imply an association with Cricket in his marketing and advertising. Specifically, Defendant has maintained prominent CRICKET branded displays and signs in his stores, and has painted large CRICKET logos on his trailers which he uses in connection with his business.

7. Unless Defendant is enjoined from continuing his unauthorized activities, Cricket will continue to suffer irreparable injury to its business reputation and goodwill, lost sales and profits, and infringement of its valuable CRICKET mark, to the detriment of Cricket and the public.

2

## JURISDICTION AND VENUE

8. This is a civil action arising under the Lanham Act, Title 15, United States Code, §§ 1114 and 1125(a), and under the common law of the State of Arizona. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1338 (trademark and unfair competition), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction over the defendant is vested and venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, and a substantial part of the events giving rise to the claims herein occurred in this District in connection with Defendant's ownership and operation of three retail stores located in Tucson, Arizona. On information and belief, Defendant solicits and has done business using Cricket's marks in this State with customers located within this State and in this District, and thereby purposefully availed himself of the privilege of doing business in this State and in this District. The claims alleged herein arise out of or are related to the defendant's forum-related activities and the exercise of jurisdiction herein is otherwise reasonable. Personal jurisdiction is also proper over the Defendant in that the intentional and wrongful conduct described herein was directed at this District and at Cricket, who suffered damage in this District as a result of Defendant's intentional conduct.

10. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. §§ 1391(b), as the claims arise in this District and Defendant, a resident of this District, is subject to personal jurisdiction here.

## BACKGROUND

### Cricket's Valuable Trademark Rights

11. Cricket is the pioneer of unlimited wireless services with no long-term commitments or credit checks required, and has become a market leader through its development of a simple, affordable wireless service offering consumers and local

2

businesses a flat-rate unlimited service over the latest technology, high-quality, all-digital wireless network.

12. Cricket also offers customers access to a variety of the latest wireless telephones and devices and feature-rich mobile applications such as unlimited text, instant and picture messaging, Mobile Web, popular games, ringtones and wallpapers.

13. Cricket has used and is using its CRICKET mark in commerce on and in connection with offering and selling its wireless telecommunications goods and services continuously since at least as early as March 1999.

14. Since its first use in commerce in March 1999, the CRICKET trademark for wireless telecommunications products and services has become an extremely popular and widely recognized brand, with 2.86 million subscribers to its CRICKET branded wireless telecommunications services as of the end of the fiscal year 2007.

15. Since March 1999, Cricket has continuously and extensively promoted, offered and sold wireless telecommunications products and services in interstate commerce under the CRICKET mark. The CRICKET products and services are available in retail stores and on-line at various websites, including *mycricket.com*.

16. On September 11, 1998, Cricket filed United States Trademark Application Serial No. 75/551,094 for the CRICKET mark. On June 20, 2000, the United States Patent and Trademark Office issued Registration No. 2,359,370 to Plaintiff for the CRICKET mark for use on "wireless communication apparatus, namely, cellular telephones, telephone accessories, namely, fitted carrying cases, belt clips, battery chargers integrated wireless communication and computing apparatus, namely, cellular telephones, and telephone accessories, namely, fitted carrying cases, belt clips, battery chargers." A true and correct copy of the USPTO online record for Registration No. 2,359,370 is attached hereto as Exhibit A.

17. On September 11, 1998, Cricket filed United States Trademark Application Serial No. 75/551,093 for the CRICKET mark. On July 4, 2000, the United States Patent and Trademark Office issued Registration No. 2,363,821 to Plaintiff for the

CRICKET mark for use in connection with "retail store services featuring wireless communication apparatus, namely, modems, cellular telephones, wireless local loop telephones and personal communication services (PCS) handsets with manuals and accessories sold as a unit therewith, telephone accessories, namely, fitted carrying cases, belt clips, battery chargers and batteries, and car kits consisting of audio speakers, microphones, and external antenna connectors; integrated wireless communication and computing apparatus namely, cellular telephones, wireless local loop telephones and personal communication handsets combined with a computer or personal digital assistant (PDA) device with manuals and accessories sold as a unit therewith; and telephone accessories, namely, fitted carrying cases, belt clips, battery chargers and batteries, and car kits consisting of audio speakers, microphones, and external antenna connectors." A true and correct copy of the USPTO online record for Registration No. 2,363,821 is attached hereto as Exhibit B.

18. On September 11, 1998, Cricket filed United States Trademark Application Serial No. 75/551,090 for the CRICKET mark. On June 20, 2000, the United States Patent and Trademark Office issued Registration No. 2,359,369 to Plaintiff for the CRICKET mark for use in connection with "telecommunications services, namely, offering personal communications services via wireless networks; and providing cellular telephone services and personal communication network (PCN) services." A true and correct copy of the USPTO online record for Registration No. 2,359,369 is attached hereto as Exhibit C.

19. On July 19, 2004, Cricket filed United States Trademark Application Serial No. 76/603,202 for the CRICKET logo. On October 30, 2007, the United States Patent and Trademark Office issued Registration No. 3,325,188 to Plaintiff for the CRICKET logo for use in connection with all of the goods and services outlined in Paragraphs 16-18. A true and correct copy of the USPTO online record for Registration No. 3,325,188 is attached hereto as Exhibit D. The marks and registrations described in

Paragraphs 16-19 shall be referred to collectively herein as the "CRICKET mark and logo."

20.   In the more than eight years that Cricket has been continuously using the CRICKET mark in interstate commerce, it has spent millions of dollars per year advertising and promoting its goods and services under the CRICKET mark in a variety of media, including but not limited to television, radio, a wide variety of general circulation and specialized print media, billboards, trade shows and the Internet. The goods and services offered by Cricket under the CRICKET mark have been the subject of many articles in general circulation newspapers and magazines, as well as radio, television and Internet broadcasts.

21.   By virtue of Cricket's long, continuous and exclusive use of the CRICKET mark and the extensive and costly marketing efforts and repeated association of Cricket's goods and services with the CRICKET mark, Cricket's mark has become widely recognized, and/or distinctive in the State of Arizona. As a result, the consuming public in Arizona uses the CRICKET mark to identify Cricket's goods and services, and associates the mark with Cricket exclusively. Because of the consistent quality of Cricket's goods and services marketed under and in association with the CRICKET mark, Cricket has established considerable good will and reputation with respect to its goods and services.

22.   Cricket sells its products and service primarily through two channels: Cricket's own retail locations and kiosks (the direct channel); and authorized dealers and distributors, including premier dealers, local market authorized dealers, national retail chains and other indirect distributors (the indirect channel). As of December 31, 2007, Cricket had 152 direct locations and 2,690 indirect distributors, including approximately 790 premier dealers. Cricket strategically places its direct and indirect retail locations to enable the company to focus on its target customer demographic and provide the most efficient market coverage.

**Defendant's Wrongful Conduct**

23. Defendant is not an authorized Cricket dealer.  Cricket has not consented to any of Defendant's uses of its CRICKET mark or logo, nor has Cricket sponsored, endorsed or approved the services offered and promoted by Defendant.  Nor is there any affiliation between Cricket and Defendant.

24. Without Cricket's authorization, Defendant has expressly and/or impliedly acted as an authorized Cricket dealer.

25. Without Cricket's authorization, Defendant has accepted payments intended to compensate Cricket for wireless stores it provides to its customers.

26. Without Cricket's authorization, Defendant has sold and distributed CRICKET branded phones.

27. Without Cricket's authorization, Defendant has activated phones on the Cricket wireless network.

28. On information and belief, Defendant has sold "re-flashed" used or stolen phones to consumers and attempted to pass off such phones as authorized Cricket products.

29. Without Cricket's authorization, Defendant has prominently displayed the CRICKET mark and logo on signs, "feathers," posters and displays in his GSM Cellular stores.

30. Without Cricket's authorization, Defendant has prominently displayed the CRICKET mark and logo on his vans and trailers which he uses in connection with his business.

31. Cricket issued a letter to Defendant on September 18, 2006 asserting its legal rights and demanding that Defendant cease the infringing activities asserted herein.

32. Cricket's outside counsel issued a letter to Defendant on March 14, 2008, once again demanding that Defendant cease his authorized activities, as described herein.

7

33. Defendant responded on March 19, 2008 denying any wrongdoing, but promising to not use the CRICKET mark or logos, or to represent himself as a Cricket authorized dealer. Defendant refused Cricket's other requests.

34. On March 24, 2008 Cricket sent Defendant a settlement letter attempting to confirm, among other things, that Defendant had agreed not to expressly or impliedly act as an authorized Cricket dealer, and would therefore cease and desist from all further use of the CRICKET marks and logos in connection with his stores and related advertising.

35. Defendant failed to respond substantively to Cricket's March 24, 2008 letter until April 25, 2008 when he responded that he had taken steps to comply with Cricket's requests. However, Cricket obtained evidence that Defendant opened an additional GSM Cellular store location in Tucson, and has continued all of his infringing practices in connection with all of his stores. Attached as Exhibit E are photographs of Defendant's storefront and his vans and trailers which were taken on April 29-30, 2008 showing that all of the CRICKET displays still remain. In fact, it appears that the only change Defendant made was to move the vans and trailers from one GSM Cellular location to another.

36. Cricket sent Defendant a final settlement proposal on May 2, 2008 again attempting to resolve this dispute amicably and requesting compliance with its requests. When Defendant once again failed to deliver on his promises, this left Cricket no choice but to file this Complaint.

37. On May 5, 2008 Defendant filed two fictitious business name statements with the State of Arizona, registering the trade names KRICKET and KRICKET CELLULAR in connection with his business. Attached as Exhibit F are copies of printouts from the Arizona Secretary of State website showing such filings. On information and belief, these filings demonstrate Defendant's bad faith intent to continue to trade on the goodwill established by Cricket under the CRICKET mark, and to create a false impression of association with Cricket.

38. Defendant's prominent and continued use of the CRICKET mark and logo in connection with his stores is likely to cause confusion as to whether Defendant's services originate from or are sponsored by Cricket, or whether there is an association or affiliation between Defendant and Cricket.

39. Defendant's use of the CRICKET mark and logo and Defendant's actions described herein are likely to cause confusion, deception and/or mistake in the marketplace, the relevant industry, and all channels of trade for Cricket's goods and services.

40. Defendant's use of the CRICKET mark and logo and his actions described herein have been, and continue to be, deliberate, willful, and with disregard to the rights of Cricket.

41. Defendant's continuing conduct constitutes an ongoing threat to Cricket and the public. Cricket has sustained and will continue to sustain irreparable injury as a result of Defendant's conduct, which injury is not compensable by the award of monetary damages. Unless Defendant is restrained and enjoined from engaging in his infringing conduct, Cricket will continue to suffer irreparable injury.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement – 15 U.S.C. § 1114(1))**

42. Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

43. Prior to Defendant's use of the CRICKET mark and logo in connection with his stores, Defendant either had actual notice and knowledge, or constructive notice (pursuant to 15 U.S.C. § 1072), of Cricket's ownership and registrations of the CRICKET mark.

44. Defendant was aware of Cricket's business prior to Defendant's use of the CRICKET mark and logo in connection with his stores.

45. On information and belief, Defendant deliberately and willfully used and is using the CRICKET mark and logo in connection with his stores in an attempt to trade

on the enormous goodwill, reputation and selling power established by Cricket under the CRICKET mark, and to create a false impression of association with Cricket.

46. On information and belief, the services offered by Defendant under the CRICKET mark and logo are moving and will continue to move through the same channels of trade, and are being offered and/or sold through the same channels of advertising and to the same consumer groups, as the goods and services that are offered and sold by Cricket under the CRICKET mark.

47. Cricket has not consented to Defendant's use of the CRICKET mark and logo in connection with Defendant's stores.

48. Defendant's unauthorized use of the CRICKET mark and logo in connection with Defendant's stores falsely indicates to consumers that Defendant's services are in some manner connected with, sponsored by, affiliated with, or related to Cricket, and/or the products and services of Cricket.

49. Defendant's unauthorized use of the CRICKET mark and logo is also likely to cause consumers to be confused as to the source, nature and quality of the services that Defendant is offering in connection with the CRICKET mark and logo.

50. Defendant's unauthorized use of the CRICKET mark and logo, as set forth herein, facilitates the acceptance of Defendant's services throughout the marketplace, not based on the quality of the services provided by Defendant, but on the association that the public is likely to make with Cricket and the reputation and goodwill associated with Cricket's goods and services.

51. Defendant's unauthorized use of the CRICKET mark and logo deprives Cricket of the ability to control the quality of the goods and services marketed under the CRICKET mark, and instead, places Cricket's valuable reputation and goodwill into the hands of Defendant, over whom Cricket has no control.

52. The aforementioned activities of Defendant are likely to cause confusion or mistake, or to deceive consumers or potential consumers wishing to purchase Cricket's

products and services, and is also likely to confuse consumers as to an affiliation between Cricket and Defendant.

53. On information and belief, the aforementioned activities of Defendant have already caused actual consumer confusion as to an affiliation between Cricket and Defendant.

54. The aforementioned acts of Defendant constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

55. The intentional and willful nature of Defendant's acts makes this an exceptional case under 15 U.S.C. § 1117(a).

56. Cricket has been, is now, and will be irreparably harmed by Defendant's aforementioned acts of infringement, and unless enjoined by the Court, Defendant will continue to infringe upon the CRICKET mark.  There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**SECOND CAUSE OF ACTION**
**(Trademark Infringement, Unfair Competition, and False Designation of Origin – 15 U.S.C. § 1125(a))**

57. Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

58. Cricket is informed and believes that Defendant has prominently used the CRICKET mark and logo in connection with his stores, and has taken the other actions alleged above, to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or approval of the services of Defendant, deliberately to pass off Defendant's services as those of Cricket, and/or to falsely imply an association with Cricket.

59. Defendant's acts as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or approval of the services of Defendant.

60. Defendant's conduct constitutes trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

61. Unless enjoined, Defendant will continue his infringing conduct.

62. As a direct and proximate result of Defendant's infringing conduct, Cricket has suffered and will continue to suffer irreparable injury to its business reputation and goodwill for which no adequate remedy exists at law, and has lost sales and profits in an amount not yet fully ascertained.

63. Defendant's conduct complained of herein is malicious, fraudulent, knowing, willful, and deliberate entitling Cricket to an accounting of Defendant's profits, increased damages, and an award of its attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. § 1117.

**THIRD CAUSE OF ACTION**
**(Common Law Trademark Infringement)**

64. Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

65. Defendant's unauthorized use of the CRICKET mark and logo in interstate commerce and in this judicial District in connection with the promotion and offering of Defendant's services constitutes a false designation of origin, a false and/or misleading description of fact, and/or a false or misleading representation of fact which constitutes an infringement of Cricket's trademark rights in and to the CRICKET mark and logo, and is likely to cause confusion, and mistake, and/or deception as to the affiliation, connection or association of Defendant and Cricket, and/or as to the origin, sponsorship, or approval of Defendant's services by Cricket. Defendant's actions have caused, and will continue to cause, irreparable harm to Cricket.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition)**

66. Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

12

67. Defendant's has misrepresented its business operations and products for the purpose of causing deception as to the affiliation, connection or association of Defendant and Cricket, and/or as to the origin, sponsorship, or approval of Defendant's services by Cricket.

68. Defendant is attempting to take for profit, at little or no cost, the reputation and goodwill of Cricket, which Cricket has developed through the investment of substantial time and money.

69. Defendant's actions are contrary to honest practice in commercial matters, and being committed for the purposes of misappropriating Cricket's reputation and goodwill.

70. Defendant's actions have harmed Cricket and will continue to do so unless enjoined.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Cricket respectfully requests that this Court enter an Order granting the following relief:

a) For judgment that the CRICKET mark and logo have been and continue to be infringed by Defendant;

b) Preliminary and permanent injunctive relief enjoining Defendant and each of his agents, employees, servants, officers, directors, successors in interest, heirs, assigns and all persons, firms or corporations, acting by or under their authority, in active concert or privity or in participation with it, from using the CRICKET mark, the CRICKET logo, or any confusingly similar marks in any way or using any word, words, phrases, symbols, logos, or any combination of words or symbol that would create a likelihood of confusion, mistake, or deception therewith, in connection with or in the marketing, offering, selling, licensing, displaying, advertising, or developing of Defendant's services;

c) Preliminary and permanent injunctive relief enjoining Defendant to recall from all his offices and all others, whether persons, firms, or corporations, acting by or

under their authority, in active concert or privity or in participation with it, any material containing the CRICKET mark and logo in any way and any word, words, phrases, symbols, logos, any combination of words or symbols that would create a likelihood of confusion, mistake and/or deception therewith, in connection with or in the marketing, offering, selling, licensing, displaying, advertising, or developing of Defendant's business services;

d) Preliminary and permanent injunctive relief enjoining Defendant, his officers, agents, employees, and all persons acting in concert with them, from infringing the CRICKET mark and logo and/or engaging in further such unlawful acts and from reaping any additional commercial advantage from his misappropriation of the rights of Cricket and all affiliated and related companies of Cricket in the CRICKET mark and logo and the registrations of these marks;

e) Preliminary and permanent injunctive relief enjoining Defendant, his officers, agents, employees, and all persons acting in concert with them, from activating phones on the Cricket wireless network;

f) Preliminary and permanent injunctive relief enjoining Defendant, his officers, agents, employees, and all persons acting in concert with them, from selling Cricket wireless services;

g) Preliminary and permanent injunctive relief enjoining Defendant, his officers, agents, employees, and all persons acting in concert with them, from accepting payments for Cricket wireless services;

h) For all actual damages sustained by Cricket as the result of Defendant's actions, together with prejudgment interest, according to proof, including damages pursuant to 15 U.S.C. § 1117;

i) For an accounting of the profits of Defendant resulting from his acts of infringement pursuant to 15 U.S.C. § 1117;

j) For enhanced damages pursuant to 15 U.S.C. § 1117;

1   k) For an award of attorneys' fees pursuant to 15 U.S.C. § 1117 or as otherwise permitted by law;

2   l) For Cricket's costs of suit, including its reasonable litigation expenses, pursuant to 15 U.S.C. § 1117; and

3   m) Granting Cricket such additional, other, or further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

DATED this 8th day of May, 2008.

          FISH & RICHARDSON, P.C.
           Lisa M. Martens
           Andrew M. Abrams

          and

          LEWIS AND ROCA LLP

          By *s/Richard A. Halloran*
            Richard A. Halloran
          Attorneys for Plaintiff Cricket Communications, Inc.