Lisa M. Abrams *Pro hac vice*
Andrew M. Abrams *Pro hac vice*
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Email: Abrams@fr.com
Email: abrams@fr.com

Richard A. Halloran, State Bar No. 013858
EMail:  RHalloran@LRLaw.com
Shane E. Olafson, State Bar No. 024605
Email: SOlafson@LRLaw.com
LEWIS AND ROCA LLP
40 North Central Avenue
Phoenix, Arizona  85004-4429
Tel:  (602) 262-5311
Fax:  (602) 734-3746

*Attorneys for Plaintiff Cricket Communications, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Cricket Communications, Inc.**, <br> Plaintiff, <br> vs. <br> **Abid Nazir, d/b/a GSM Cellular** <br> Defendant. | Case No. CV08-00295-JMR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF CRICKET COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Cricket Communications, Inc. ("Cricket") moves for summary judgment against defendant Abid Nazir, d/b/a GSM Cellular and Kricket Cellular ("Defendant").

**I.    INTRODUCTION**

On September 26, 2008 this Court granted Cricket's Motion for Preliminary Injunction.  [Separate Statement of Material Facts ("SOF"), ¶ 23.]  In its subsequent denial of Defendant's Motion for Reconsideration issued on October 16, 2008 [SOF, ¶ 24], the Court reaffirmed this decision, finding a "strong likelihood of confusion" and that "Cricket has made an overwhelming showing of likelihood of success on the merits" due to all of the *Sleekcraft* factors favoring Cricket.  [*Id.*]

2017537_1.TMP

Regrettably, despite the unambiguous nature of these rulings, the course of dealing between the parties since that time has been marked by a frustrating lack of cooperation on the part of Defendant. Defendant violated the Court's September 26, 2008 Order by making only cosmetic changes to his business, brazenly continuing the unauthorized activation of phones on the Cricket wireless network, the unauthorized acceptance of payments for Cricket's wireless services, and the extensive use of the color green to imply a false association with Cricket. [SOF, ¶ 25.] Worse yet, Defendant has utterly refused to participate in discovery proceedings for this case, failing to provide a single answer or document in response to Cricket's discovery requests, which were served on November 6, 2008. [SOF, ¶ 26.]

According to Fed.R.Civ.P. 36(a)(3), "a matter is admitted unless, within thirty days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." As such, Defendant is deemed to have made admissions on numerous significant issues, including the following: Defendant admits to possessing a bad faith intent to confuse consumers and capitalize on Cricket's goodwill in its trademarks; Defendant admits that there is a likelihood of confusion between the parties' use of their respective marks; Defendant admits to having engaged in the unauthorized acceptance of payments for Cricket's wireless services and failing to remit such payments to Cricket, thereby causing Cricket's customers to have their service terminated; and Defendant admits to his failure to comply with the Preliminary Injunction Order issued by the Court on September 26, 2008. [SOF, ¶ 27: *See* Exhibit 1 to the Declaration of Andrew M. Abrams filed herewith for a true and correct copy of Cricket's Requests for Admission.]

In view of the foregoing, Cricket respectfully submits that there are no genuine issues of material fact concerning its asserted claims under the Lanham Trademark Act of 1946, as amended, Title 15, United States Code, §§ 1051 *et seq*. (the "Lanham Act") and related state claims. Thus, Cricket's trademark infringement, unfair competition, and

false designation of origin claims may be decided as a matter of law and this Court should grant summary judgment in favor of Cricket.

## II.     UNCONTESTED MATERIAL FACTS

Cricket incorporates by reference the Factual Background and attached exhibits set forth in its Motion for Preliminary Injunction [Dkt. 11.]  These facts and exhibits are also made of record in Cricket's Separate Statement of Material Facts filed herewith.  *See,* SOF ¶¶ 1-22.]  The statements therein were supported by the declarations of Randall McCutchan and Andrew M. Abrams, and were not contested by Defendant, as Defendant failed to respond to Cricket's Motion.  [SOF, ¶ 30.]  Moreover, many of these facts are deemed admitted through Defendant's failure to respond to Cricket's Requests for Admissions.  [SOF, ¶ 26.]  In its October 16, 2008 Order, this Court found that these facts led to a conclusion that "a strong likelihood of confusion exists, and that Cricket has made an overwhelming showing of likelihood of success on the merits."  [SOF, ¶ 28.]

Specifically, it is undisputed that "'Cricket' is a 'strong' mark, evaluated 'in terms of its conceptual strength and commercial strength.'"  [SOF, ¶ 29.]  "Likewise, 'Cricket' and 'Kricket' are highly similar in both appearance and sound, as is the green color used by both, which would suggest a strong likelihood of consumer confusion."  [*Id.*]  The Court goes on to state that "each of the other [*Sleekcraft*] factors listed above also weighs in favor of Plaintiff, including the fact that the goods and services (telecommunications) involved here are virtually identical, the marketing channels used are virtually the same, as Defendant is clearly attempting to attract the same customers as Cricket, and Defendant's intent in choosing the name "Kricket" appears to be a brazen attempt to cause confusion and to deceive consumers."  [*Id.*]

In granting Cricket's request for a preliminary injunction, the Court enjoined defendant from "using the KRICKET mark, the CRICKET mark, the CRICKET logo, or any confusingly similar marks in any way . . . ."  [Dkt. 18.]  The Court also ordered

Defendant to "recall . . . any material containing the KRICKET mark or the CRICKET mark and logo in any way . . .," and enjoined Defendant "from infringing the CRICKET mark and logo and/or engaging in further such unlawful acts and from reaping any additional commercial advantage from his misappropriation of the rights of Cricket . . . ."  [*Id.*]

As set forth in greater detail in the incorporated Factual Background, Defendant has long engaged in numerous actions designed to deliberately give consumers the impression that the parties are somehow affiliated in order to illegitimately profit off of Cricket's considerable goodwill.  [SOF, ¶ 12.]  Defendant has done this by prominently displaying the CRICKET mark and logo on signs, posters and displays in his retail stores and on his vans and trailers.  [SOF, ¶ 13.]  Defendant has engaged in the illicit sale and distribution of Cricket wireless products, and fraudulently accepted payments intended to compensate Cricket for providing wireless communications services to its customers.  [SOF, ¶ 14.]  Defendant has also sold re-flashed used or stolen phones under the guise that such products were legitimate Cricket products.  [SOF, ¶ 15.]

Defendant's recurring strategy in responding to Cricket's countless requests to cease such infringing behavior has been to feign cooperation while attempting to find deceitful "loopholes."  For instance, despite repeatedly claiming full compliance with the terms set forth in Cricket's multiple settlement letters, Defendant surreptitiously opened an additional store location in Tucson and continued all of his infringing practices.  [SOF, ¶ 17.]  Subsequently, in May 2008, Defendant committed his most egregious act by adopting and using the name KRICKET in connection with his cellular stores.  Under the misguided belief that the replacement of a single letter in the trademark gave him a license to infringe, Defendant attempted to extort money from Cricket in exchange for promised cooperation.  [SOF, ¶¶ 18-19.]

Defendant's strategy of contrived good faith negotiation mixed with deception and delay has bought him considerable additional time to continue his infringing activities and

to cause harm to Cricket and its customers.  Each time Cricket learned of Defendant's new methods of infringement, Cricket has ultimately been forced to turn to this Court for relief.  First, by filing the Complaint and next, by filing the Motion for Preliminary Injunction.  Now, once again, after a period of good faith settlement negotiations with Defendant, it is apparent that Defendant has no desire to participate fairly in this litigation, nor settle this matter upon reasonable terms.  Accordingly, in the interest of finally bringing a decisive end to this prolonged dispute, Cricket brings this present Motion for Summary Judgment.

## III.  LEGAL ARGUMENT

### A.  Summary Judgment Standard.

Summary judgment is granted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  Once the movant establishes the absence of any genuine issue of material fact, the burden of production shifts to the non-moving party to show specific facts setting forth a genuine issue for trial. *Id; Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986).

### B.  There is No Genuine Issue as to Any Material Fact and Cricket is Entitled to Judgment as a Matter of Law on its Lanham Act Claims and Related State Law Claims

In pertinent part, the Lanham Act provides that:

(1) Any person who shall, without consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with a sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;...shall be liable in a civil action by the registrant for the remedies here and after provided. 15 U.S.C. § 1114.

In its Motion for Preliminary Injunction [Dkt. 11] which was granted on September 26, 2008 [SOF, ¶¶ 23-24], Cricket conclusively established the following elements required to prevail in a claim for trademark infringement: (1) that it owns the registered

trademark CRICKET; (2) Defendant's use of the CRICKET and KRICKET marks in commerce has been without Cricket's consent; and (3) that Defendant's use of such marks and various other illicit promotional activities (as set forth in Section II, *supra*) is likely to cause confusion among consumers.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047-48, 1053 (9th Cir. 1999); 15 U.S.C. §1114.  Cricket hereby incorporates by reference Section II(A)(1) of its Motion for Preliminary Injunction [Dkt. 11] which was uncontested by Defendant.  As set forth therein in the detailed discussion of the various *Sleekcraft* factors and reaffirmed by the Court in its October 16, 2008 Order [SOF, ¶ 24], the likelihood of confusion analysis in this case is straightforward: Defendant has intentionally used the registered Cricket Marks and the KRICKET mark in connection with Defendant's ownership and operation of retail cellular stores.  By doing so, Defendant, through his conduct, has misrepresented to the unwitting public that his stores are affiliated with Cricket.

**Cricket's Requests for Admissions should be deemed admitted**.

According to Fed.R.Civ.P. 36(a)(3), "a matter is admitted unless, within thirty days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  *See O'Campo v. Hardisty*, 262 F.2d 621, 623-24 (9th Cir.1958).

Cricket served its First Set of Requests for Admission on Defendant on November 6, 2008.  [SOF, ¶ 26.]  To date, Defendant has not responded to Cricket's Requests for Admission, nor has he provided any objections or any explanation as to his lack of response.  [*Id.*]  (Defendant has also failed to respond to Cricket's First Set of Interrogatories and First Set of Requests for Production of Documents and Things, both also served on November 6, 2008.  [*Id.*])  Accordingly, Cricket requests that the Court deem as admitted all of its Requests for Admission to Defendant.

The mere fact that Defendant is a *pro se* litigant should not allow him to evade his discovery obligations. Defendant cannot blatantly ignore the basic rules of civil procedure without consequence. *See Whitsitt v. Vinotheque Wine Cellars*, 2008 WL 4850715, *5 (E.D. Cal. 2008); *McMahon-Hammon v. Montenaro*, 2005 WL 1334543, *1 (D. Ore. 2005) (granting defendant's motion for summary judgment and holding that because plaintiff "failed to respond to Defendant's Requests for Admissions, the Court must deem the matters contained in the Requests for Admissions admitted pursuant to Fed.R.Civ.P. 36(a) even though Plaintiff appears *pro se*.") In *Whitsitt*, the court explicitly stated that "there is no '*pro se* unfairness' in deeming admitted the valid admissions" that the *pro se* litigant had failed to respond to. 2008 WL at *5. The court noted that plaintiff had been "warned by this court that failure to comply with the local and federal rules is grounds for sanctions including dismissal, and he is presumed to have knowledge of these rules." *Id.*

Similarly, here, Defendant has received ample notice regarding the importance of complying with the local and federal rules. After failing to respond to Cricket's Motion for Preliminary Injunction, Defendant falsely claimed to the Court that he had never been served with the Motion. [SOF, ¶ 31.] On October 16, 2008, the Court found that Plaintiff's Certificate of Service showed that Plaintiff *did* in fact timely mail a copy of the motion to Defendant, and denied Defendant's Motion for Reconsideration. [SOF, ¶ 32.] Subsequently, on November 3, 2008, Defendant failed to appear at the Court's mandated scheduling conference. After receiving a telephone call from the clerk and appearing substantially late at the hearing, Defendant apologized profusely to the Court and promised to heed its rules going forward. [SOF, ¶ 33.]

Furthermore, Defendant has repeatedly shown an inclination to wield the judicial resources available to him as a "sword," threatening Cricket with bold statements such as "I will even take this matter all the way to US Supreme Court if I will have to" and "[l]ets fight in the court where I will prove you wrong." [SOF, ¶ 34.] Combined with his

willingness to use relatively sophisticated legal mechanisms such as a Motion to Reconsider and Motion to Set Aside the Order [SOF, ¶ 35], Defendant cannot play the "*pro se*" excuse card with sincerity in an attempt to escape all personal responsibility. Defendant has no valid excuse for his utter refusal to abide by even the most basic discovery requirements and therefore, Cricket requests that its Requests for Admission be deemed admitted.

The full list of deemed admissions is set forth in Exhibit 1 to the Declaration of Andrew M. Abrams which is filed herewith [SOF, ¶ 27.]. Indeed, Defendant is deemed to have made admissions on numerous significant issues, including the following: Defendant admits to possessing a bad faith intent to confuse consumers and capitalize on Cricket's goodwill in its trademarks; Defendant admits that there is a likelihood of confusion between the parties' use of their respective marks; Defendant admits to having engaged in the unauthorized acceptance of payments for Cricket's wireless services and failing to remit such payments to Cricket, thereby causing Cricket's customers to have their service terminated; and Defendant admits to his failure to comply with the Preliminary Injunction Order issued by the Court on September 26, 2008. [*Id.*]

Given these admissions, which merely confirm many of Cricket's assertions that have been made under oath as well as the Court's findings in its October 16, 2007 Order [Dkt. 21], Cricket submits that there are no genuine issues of material fact concerning its asserted claims under the Lanham Act and related state claims.

### C. The Court Should Enter a Permanent Injunction

Ninth Circuit law is well settled that a defendant's temporary cessation of infringing activity does not moot the need for injunctive relief. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986). In *Polo Fashions*, the Ninth Circuit reversed the district court's denial of a permanent injunction where the defendant had ceased the activities complained of. In ordering permanent relief, the court stated that

trademark plaintiffs are *not* required to present specific evidence demonstrating that defendants will continue infringing in the future. *Id*. "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial protection of its trademark." *Id.* Moreover, "a trademark plaintiff 'entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer.'" *Id.* (*quoting William R. Warner & Co. v. Eli Lily & Co.*, 265 U.S. 526, 532 (1924)).

Accordingly, while Defendant recently claims to have shut down his business (for purely financial reasons unrelated to this litigation), a permanent injunction is still appropriate. As set forth previously, despite the Court's Order granting Cricket's Motion for Preliminary Injunction, Defendant shamelessly continued the unauthorized activation of phones on the Cricket wireless network, the unauthorized acceptance of payments for Cricket's wireless services, and the extensive use of the color green to imply a false association with Cricket. [SOF, ¶ 25.] Defendant has been strident in his communications with Cricket, denying any wrongdoing whatsoever and repeatedly threatening to cause further inconvenience to Cricket by "taking this matter to the Supreme Court," ostensibly in an effort to create negotiating leverage. [SOF, ¶ 36.] This, of course, is from the same individual who, under the belief that a name-change to KRICKET shielded him from any liability, attempted to extort money from Cricket by asking Cricket either to buy Defendant's business or to authorize Defendant to sell Cricket goods and services. [SOF, ¶ 19.] Given these reprehensible actions and Defendant's history of feigning compliance with Cricket's requested settlement terms, it is all too apparent that Defendant cannot simply be blindly trusted to refrain from reinstituting his infringing activities in the future. Thus, despite Defendant's claims that he has closed down his business and seeks to move to Florida in search of employment, the Court should make the preliminary injunction permanent. Otherwise, Defendant could easily revert back to using the KRICKET name in connection with cellular stores, or using

Cricket's marks, color scheme and promotional materials to sell unauthorized products and collect unauthorized fees. Indeed, given Defendant's refusal to abide by the discovery procedures and court orders, there is every reason to believe that he may take advantage of the lack of a permanent injunction to resume his infringing activities. If, in fact, the seventh time is the charm and Defendant does truly intend to abide by the law, making the preliminary injunction permanent will not harm him in any way. However, an order granting a permanent injunction *will* offer substantial protection to Cricket from having to re-assert its rights if Defendant infringes again.

### D.     The Court Should Award Attorneys' Fees to Cricket.

Under 15 U.S.C. § 1117(a), the court has authority to award attorney's fees to the prevailing party in exceptional cases. The Ninth Circuit holds that trademark cases are "exceptional" when the defendant acts maliciously, fraudulently, deliberately, or willfully. *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1216 (9th Cir. 2003).

Undoubtedly, this is an exceptional case. Cricket did all it could to resolve this matter without resort to judicial means, but Defendant would have none of it. Prior to filing suit, Cricket repeatedly placed Defendant on notice that his use of the CRICKET mark and logo in connection with the promotion of his cellular store violated Cricket's trademark rights. Cricket's counsel issued letters to Defendant on March 14, 2008, March 24, 2008, and May 2, 2008 attempting to resolve this dispute amicably without resort to litigation. [SOF, ¶ 16.] In response to Cricket's March 24, 2008 letter, Defendant responded that he had taken steps to comply with Cricket's requests. However, Cricket subsequently learned that Defendant had opened an additional store location in Tucson, and had continued all of his infringing practices in connection with all of his stores. [SOF, ¶ 17.] In response to Cricket's May 2, 2008 settlement proposal, Defendant filed for a trade name certification with the State of Arizona for the name KRICKET. [SOF, ¶ 18.] Viewing this action as a legal "loophole" that gave him free reign to continue his

infringing activities, Defendant attempted to extort money from Cricket by issuing the following ultimatum in a June 12, 2008 email:

> I have removed all cricket logos and trademarks as you requested. At the same time [I] have registered my business name is [sic] "Kricket" in State of Arizona. So I can do business anywhere in state of Arizona with this Trade name. It left you with 3 options.
>
> 1. Buy me out and I will close my shop for good
>
> 2. Authorize me to sell cricket so I can sell your products and services and make your Company some extra money.
>
> 3. Lets fight in the court where I will prove you wrong.
>
> Now once again I have thrown the ball is in [sic] your Court.  I hope you will make a wise move. If you want to solve this without any problem you can [a]lso arrange a meeting between me and cricket. We may solve this nicely like that. But Think about it. Have a nice day

[SOF, ¶ 19.]

Even after filing suit, Cricket attempted to resolve the matter without involving the Court.  Undeterred, Defendant followed through on his threats to operate unauthorized "knock-off" Cricket cellular stores using Cricket's distinctive green color scheme as well as the virtually identical name KRICKET in order to sell Cricket products and services. [SOF, ¶ 21.]  Cricket then sent Defendant one more letter, attempting to educate Defendant on the basics of trademark law and making one final settlement offer.  When Defendant ignored this proposal, Cricket filed a motion for a preliminary injunction, which was granted by this Court.  [SOF, ¶ 21, 23.]

The pattern of egregious behavior does not stop there.  Defendant violated the Court's Order granting Cricket's Motion for Preliminary Injunction by brazenly continuing the unauthorized activation of phones on the Cricket wireless network, the unauthorized acceptance of payments for Cricket's wireless services, and the extensive use of the color green to imply a false association with Cricket.  [SOF, ¶ 25.]  Moreover, Defendant has refused to participate in discovery proceedings for this case, failing to provide a single answer or document in response to Cricket's discovery requests, which

were served on November 6, 2008.  [SOF, ¶ 26.]  At the same time, Defendant has repeatedly threatened to "go to the Supreme Court" and to use other judicial means, such as a request to transfer the case to Florida, to cause Cricket further inconvenience.  [SOF, ¶ 37.]

Defendant cannot have it both ways.  He cannot take refuge in the protections offered by our legal system and then refuse to comply with the rules when they fail to suit his needs.  Defendant should not be permitted to violate Court orders and commit intentionally infringing acts in an effort to extort Cricket into accepting a settlement that is favorable to him.  Having forced Cricket into bringing this lawsuit, into filing a motion for preliminary injunction, and now, into filing a motion for summary judgment all so that Cricket could protect its intellectual property rights, Defendant should be held responsible for his willful and malicious conduct.  The Court should award Cricket its reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a).

## IV.    CONCLUSION

For all of the foregoing reasons, the Court should award summary judgment to Cricket on its Lanham Act and related state claims.  The resulting judgment should make permanent the preliminary injunction previously entered by the Court and should include an award of reasonable attorney's fees.

DATED:  February 9, 2009.

                                    LEWIS AND ROCA LLP
                                        Richard A. Halloran
                                        Shane E. Olafson

                                  and

                                  FISH & RICHARDSON P.C.

                                  By */s/ Andrew M. Abrams*
                                        Lisa M. Abrams
                                        Andrew M. Abrams
                                  Attorneys for Plaintiff Cricket Communications, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

I hereby further certify that on February 9, 2009, I served the attached document by Federal Express on the following, who is not a registered participant of the CM/ECF system:

Abid Nazir, d/b/a GSM Cellular
247 West Grant Road, Suite 2
Tucson, Arizona  85705
Defendant

      /s/ *C.Waight*